Milton SILVERMAN,
Petitioner-Appellant,

v.

UNITED STATES of America,
Respondent-Appellee.

Nos. 1004, 1005, Dockets 76–2073, 76–2085.

United States Court of Appeals,
Second Circuit.

Argued April 7, 1977.

Decided May 31, 1977.

---

Lloyd A. Hale, New York City, for appellant.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., Alan Levine, Robert J. Jossen, Audrey Strauss, Asst. U. S. Attys., New York City, of counsel, for appellee.

Before .OAKES, Circuit Judge, HOLDEN, District Judge,* and WYZANSKI, Senior District Judge.**

WYZANSKI, Senior District Judge:

This is an appeal by Silverman (whose conviction and sentence on charges of violating 18 U.S.C. § 664 and 29 U.S.C. § 439(b) and (c) and U.S.C. § 501(c) were affirmed by us in *United States v. Silverman*, 430 F.2d 106 (2nd Cir., 1970)), from two orders of Judge Palmieri in the District Court for the Southern District of New York. In his first order, dated May 7, 1976, Judge Palmieri denied Silverman's petition, under 28 U.S.C. § 2255, to vacate the conviction which he alleged had been procured by the Government's knowing use of perjured testimony, and which he alleged had been impeached by newly-discovered evidence. The judge's second order, dated July 16, 1976, denied what is described by Judge Palmieri in an accompanying opinion of the same date, as a motion by Silverman, apparently pursuant to Rule 60 Fed.R. Civ.P., to vacate the opinion and order of May 7, 1976.

At the outset we dismiss the appeal from the order of July 16, 1976 as improperly taken. Of course, denial of a motion to vacate an *opinion* is non-appealable. And denial of a motion to vacate an

---

* Chief Judge for the District of Vermont, sitting by designation.

** Senior District Judge for the District of Massachusetts, sitting by designation.

earlier order is likewise unappealable at least so long as the earlier order itself is appealable and has been timely appealed.

With respect to the appeal from the May 7, 1976 order, we begin with a review of the history of Silverman's conviction and sentence, which he now seeks to have vacated pursuant to 28 U.S.C. § 2255, and which we affirmed seven years ago in *United States v. Silverman, supra.*

In the case before us seven years ago, it appeared that the grand jury had indicted Silverman on counts which charged him, *inter alia*, with the offenses of (as recited in count 14) embezzling $1,000 proceeds from the sale to a junk dealer of an air-conditioning unit belonging to United Wire, Metal and Machine Welfare Fund, of which Silverman was a Trustee and the Administrator, in violation of 18 U.S.C. § 664, of (as recited in count 15) causing a false statement concerning union expenditures to be made in a form submitted to the Secretary of Labor by Local 810, International Brotherhood of Teamsters, of which Silverman was President, in violation of 29 U.S.C. § 439(b), of (as recited in count 18) causing false entries concerning the authorization of Christmas gratuities and personal loan expenditures to be made in the Local 810 executive board minutes, in violation of 29 U.S.C. § 439(c), and of (as recited in counts 9, 10, and 12) embezzling Local 810 funds which Silverman explained as expenses for an International Brotherhood of Teamsters convention, as Christmas gratuities, and as personal loans, in violation of 29 U.S.C. § 501(c).

In a trial before Judge Palmieri, about eight years ago, a petit jury convicted Silverman on the aforesaid charges, and Judge Palmieri sentenced him to four months to be served concurrently on, *inter alia*, counts 9, 10, 12, 14, and 15, and to four months to be served consecutively on count 18. He was also fined $1,000 on each of the counts on which he was found guilty. Silverman has served those sentences and paid those fines.

In the criminal trial there had been extensive conflicting evidence as to whether the Welfare Fund, in accordance with customary procedures, had abandoned an air-conditioning unit which it had owned, or had retained the unit as property of the Welfare Fund. There had been testimony from Chlystun that when the air-conditioning unit had been sold to a scrap dealer, Chlystun received the $1,000 proceeds and paid over that amount to Silverman.

During the trial there had been an issue as to *when* there had been placed upon the Local 810 executive board minutes entries showing alleged authorizations of payments to Silverman for Christmas gratuity and personal loan expenditures. The Government called as a witness Jacob Friedland, an attorney. Friedland declined to confer with counsel for the prosecution, and gave the Government no advance knowledge of what he would say. Claiming his privilege under the Fifth Amendment, he at first refused to testify. Only when immunity was conferred upon him did he take the stand. The Government informed the court and the defendant that it would examine Friedland only upon what was indicated in a report that, at Silverman's direction, Friedland had made to Silverman and Local 810 when they had retained Friedland to examine the entries which appeared in the executive board minutes of the local. The essence of Friedland's testimony is contained in the following passage:

"Q You didn't find these two pages in the minute books in this condition they're in today, is that your testimony?

A I have no recollection of the condition of the minute books or how they were written. I do know that making reference to my report I found as inconsistent situation which made me believe that there was a change in the minutes."

Friedland was not asked if he knew who altered the books.

It was against this background that in the instant case Silverman filed in the District Court his petition, pursuant to 28 U.S.C. § 2255, to vacate the judgment of conviction which had been entered and affirmed seven years ago. The thrust of the petition was directed to allegations that the

Government had knowingly used perjured testimony and had failed to disclose evidence helpful to Silverman. The petitioner claimed that he had newly-discovered evidence.

In accordance with the practice in the District Court, the clerk of that court assigned the petition to Judge Palmieri. Precipitately, Silverman's counsel served on the Government a subpoena *duces tecum* at a time when no court hearing had been scheduled. Later Silverman did not seek compliance with the subpoena at an appropriate time.

Judge Palmieri, without a hearing, wrote a 17 page opinion denying the petition on the grounds that the proffered evidence as to the air-conditioner was cumulative and related to an issue fully canvassed at the trial, that there was no showing that either Chlystun or Friedland had committed perjury, or that the Government had known of any perjury, and that if Friedland had lied about his relation to the falsification of the minute book Silverman at the trial had full information about that perjury but Silverman's then attorney, as a matter of trial tactics, had deliberately avoided the exposure lest it produce a conviction. On the basis of that opinion, Judge Palmieri on May 7, 1976 entered that order denying the petition which is now here on appeal.

Then in the District Court, Silverman moved to vacate both the opinion and the May 7, 1976 order. He claimed that the opinion was erroneous, that Judge Palmieri should have held a hearing, and that the case should be assigned to another judge. On July 16, 1976 Judge Palmieri filed an opinion and entered an order denying the motion. That order, as we have already said, is not an appealable order and is not before us.

We affirm the District Court's May 7, 1976 order.

■ The issue as to the ownership of the air-conditioner was fully litigated at the criminal trial. In the 28 U.S.C. § 2255 proceedings in the District Court the petitioner made no *prima facie* showing that on that issue he had any newly-discovered evidence, or that Chlystun had committed perjury, or, if he had, that the Government knew it. Without considering that matter further, we merely repeat the familiar principle that "it is the *knowing* use by the Government of false evidence that constitutes the denial of due process". *Hoffa v. United States*, 339 F.Supp. 388, 392 (E.D. Tenn., 1972), aff'd 471 F.2d 391 (6th Cir., 1973), cert. den., 414 U.S. 880, 94 S.Ct. 159, 38 L.Ed.2d 125 (1973).

With respect to Silverman's claim that the Government knowingly used the perjurious testimony of Friedland and suppressed information it had about him, we can only stand aghast at the effrontery of Silverman's contention. There is not a shred of evidence that the Government had from Friedland or from any other source admissible evidence or even a lead that showed that *he* had made the false entries in the minute book. No doubt, the prosecutor had his suspicions. But a person who did know the full role of Friedland was Silverman himself. It is fairly inferrable that he at the least acquiesced in an alteration made by Friedland.

■ Moreover, Silverman's counsel at the criminal trial deliberately, as a matter of trial tactics, did not seek to show and, for obvious reasons, would not have wanted to show, that Friedland himself altered the minutes. Any such revelation of falsification by the attorney would have been attributed by the jury, in all probability, to the client who retained him. In any event, the tactical decision made at the criminal trial precludes Silverman from relying on his Chutzpadich contention that he has new evidence of his attorney's falsifications. *Meyers v. United States*, 446 F.2d 37 (2nd Cir., 1971).

The petitioner's suggestions that the prosecution intimidated prospective witnesses for the defense and that the prosecution failed to prove an offense have no merit.

■ Petitioner's contention that the District Court erred in not enforcing a subpoena must fail because admittedly Silverman first did not serve the subpoena at the proper time, and then when he did serve it tardily he did not press it.

■ Silverman is mistaken in his argument that the District Court had a duty in this case to hold an oral hearing. Nothing raised by the written petition required exploration *viva voce, United States v. Franzese*, 525 F.2d 27 (2nd Cir., 1975). Cf. *Sanders v. United States*, 373 U.S. 1, 20, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1962).

We cannot close this opinion without commenting upon the unnecessary waste of judicial time in the District Court and in this Court in being faced with what is a manifestly frivolous petition and a manifestly frivolous appeal.

■ We recognize the cardinal importance that no person should be convicted upon the basis of perjury. We wholeheartedly support the rule that it is a denial of the due process guaranteed by the Fifth Amendment for a person to be convicted on the basis of testimony known to the Government to be perjurious. But this was not by any stretch of the imagination an instance where the rule could be appropriately invoked.

The order of May 7, 1976 is affirmed.

The appeal from the order of July 16, 1976 is dismissed.